2012 Ark. 7

Kenneth Joe MAY; Mary A. May; Michael Bryant; Donna Bryant; Ralph Bryant; Christi Bryant; C.M. Sneed; Carolyn Sneed; E.C. Rowlett Limited Partnership; B.J. McNair; Donna McNair; Danny Snowden; and Shelia Snowden, on behalf of themselves and all other Owners of Oil and Gas Royalty and Production Interests in the State of Arkansas, Appellants

v.

Debra AKERS–LANG, Tax Assessor of White County, Arkansas; Sue Liles, Tax Collector of White County, Arkansas; White County, Arkansas; Jeff Stephens, Tax Assessor of Faulkner County, Arkansas; Steve Simon, Tax Collector of Faulkner County, Arkansas; Faulkner County, Arkansas; Helen Noll, Tax Assessor of Conway County, Arkansas; Catherine Bradshaw, Tax Collector of Conway County, Arkansas; Conway County, Arkansas; Trina Jones, Tax Assessor of Van Buren County, Arkansas; Lisa Nunley, Tax Collector of Van Buren County, Arkansas; Van Buren County, Arkansas; Karen Reed, Tax Assessor of Cleburne County, Arkansas; Kathy White, Tax Collector of Cleburne County, Arkansas; and all other Tax Assessors, Tax Collectors, and Counties in the State of Arkansas that Assess and Collect an Ad Valorem Tax on Oil and Gas Royalties, Appellees.

No. 11–652.

Supreme Court of Arkansas.

Jan. 12, 2012.

Mays & White, PLLC, by: Richard H. Mays, Heber Springs, for appellants.

C. Eric Hance, Batesville, for separate appellees Odus Fulmer, Independence County Assessor, and Janet Perkey, Independence County Collector.

John K. Griffin, Lewisville, for separate appellees Becky Barnes, Lafayette County Tax Assessor, and Barbara Hovarter, Lafayette County Tax Collector.

Rainwater, Holt & Sexton, P.A., by: Jason F. Owens, Little Rock, for separate appellees Debra Akers–Lang, White County Tax Collector, and Mac Murphy, Ouachita County Tax Assessor.

Mark J. Whitmore, Conway, for separate appellees Helen Noll, Conway County Assessor, and Catherine Bradshaw, Conway County Collector.

Rebecca A. Jones, Magnolia, for separate appellees Sandra Cawyer, Columbia County Assessor, and Cindy Walker, Columbia County Collector.

Stephen Hawks, Conway, for separate appellees Jeff Stephens, Eaulkner County Assessor, and Steve Simon, Eaulkner County Collector.

Ralph C. Ohm, for separate appellee Regina Mannis, Arkansas County Tax Assessor.

Joe M. Rogers, West Memphis, for separate appellees Bill Eddings, Crittenden County Assessor, and Ellen Steele Foote, Crittenden County Collector.

Dustin McDaniel, Att'y Gen., by: Scott P. Richardson, Ass't Att'y Gen., Little Rock, for amicus curiae The State of Arkansas.

PAUL E. DANIELSON, Justice.

Appellants Kenneth Joe May; Mary A. May; Michael Bryant; Donna Bryant; Ralph Bryant; Christi Bryant; C.M. Sneed; Carolyn Sneed; E.C. Rowlett Limited Partnership; B.J. McNair; Donna McNair; Danny Snowden; and Shelia Snowden, on behalf of themselves and all other owners of oil and gas royalty and production interests in the state of Arkansas (collectively, "the Taxpayers"), appeal from an order of the White County Circuit Court dismissing their complaint against appellees Debra Akers–Lang, tax assessor of White County, Arkansas; Sue Liles, tax collector of White County, Arkansas; White County, Arkansas; Jeff Stephens, tax assessor of Faulkner County, Arkansas; Steve Simon, tax collector of Faulkner County, Arkansas; Faulkner County, Arkansas; Helen Noll, tax assessor of Conway County, Arkansas; Catherine Bradshaw, tax collector of Conway County, Arkansas; Conway County, Arkansas; Trina Jones, tax assessor of Van Buren County, Arkansas; Lisa Nunley, tax collector of Van Buren County, Arkansas; Van Buren County, Arkansas; Karen Reed, tax assessor of Cleburne County, Arkansas; Kathy White, tax collector of Cleburne County, Arkansas; and all other tax assessors, tax collectors, and counties in the state of Arkansas that assess and collect an ad valorem tax on oil and gas royalties (collectively, "the Counties"). The Taxpayers argue that the circuit court erred in finding that their complaint failed to state a claim of illegal exaction under the Arkansas Constitution and, as a result of that finding, dismissing their complaint. We affirm the order of the circuit court.

The Taxpayers are the owners of all or a portion of the oil, gas, and other minerals in, on, and under each of their real property located in the counties party to this lawsuit. On April 1, 2010, the Taxpayers filed a complaint against the Counties, seeking declaratory judgment and injunctive relief. The first-amended complaint, adding additional parties, was filed on October 7, 2010.

The Taxpayers asserted the following: (1) the Taxpayers are the owners of all or a portion of the oil, gas, and other minerals in, on, and under their real property; (2) the Taxpayers have leased the oil, gas, and other minerals to third-party oil and gas exploration and production companies that, pursuant to the lease agreements, have installed wells and pipelines on the Taxpayers' property, or lands unitized therewith; (3) those third-party companies are producing oil or gas from the wells and selling the oil or gas at market value, which fluctuates substantially over short periods of time, to one or more third-party purchasers; (4) the Taxpayers are paid royalties on the oil or gas, or both, that is produced from their properties and lands unitized therewith, while the production companies are paid the remainder of the purchase price of the gas as their "production" or "working interest"; (5) the pro-

duced oil or gas resulting in the royalty and working interest payments is also subject to a severance tax assessed by the State of Arkansas and to income tax assessed by the United States government and the State of Arkansas; (6) the tax assessors of the Counties obtain the amounts of royalty paid on an annual basis by the third-party companies to owners of the oil, gas, and other minerals pursuant to leases under which those companies produce and market oil or gas, and which show the amounts received by the gas exploration and production companies as their "working interests"; (7) the tax assessors of the Counties assess owners and companies an ad valorem tax on behalf of their respective counties by using an "average contract price" for the sale of the oil or gas derived from the owner's property; multiplying that price by the "working interest percent"; subtracting therefrom the production expenses (arbitrarily set at 13%), multiplied by a .20 assessment rate to obtain an "Assessment Value per Thousand Cubic Feet ("MCF") of Average Daily Production ("ADP")"; (8) the tax assessors of the Counties used the figure of $6.60 per MCF as the average contract price to be used in applying the above-stated formula for assessing the ad valorem for the taxable year 2009 and, the Taxpayers believe, beginning in the taxable year 2008; and (9) the "ad valorem royalty tax" is an illegal exaction prohibited by Arkansas Constitution article 16, section 13.

The Taxpayers cited the following reasons for alleging the tax described is an illegal exaction: (1) the assessment of an ad valorem tax on properties from which there is production of oil and gas, without assessment of such ad valorem tax on properties that contain oil and gas but from which there is no production violates the Equal Protection Clauses of Arkansas Constitution article 2, section 18, and of the Fourteenth Amendment to the United States Constitution; (2) money paid to the Taxpayers as royalty for the sale of oil or gas produced from their properties is "intangible personal property," and as such, Ark.Code Ann. § 26-3-302 prohibits levying an ad valorem tax on the money; (3) the oil or gas upon which the royalty is paid is included in the ad valorem taxes assessed against the Taxpayers prior to the time that the oil or gas is removed from the Taxpayers' property, resulting in double or multiple taxation of the same property; (4) the oil or gas upon which the royalty is paid is assessed a severance tax and an income tax that is paid to the State of Arkansas, again resulting in multiple taxation of the same property; (5) the tax upon which royalty is paid for oil or gas production and sale is a privilege or excise tax in that it is assessed after the oil or gas is separated from the realty in which it is located, and is a tax upon the privilege of separating such oil or gas, or upon the sale of such oil or gas, and is therefore a privilege or excise tax in violation of Ark. Code Ann. § 28-58-110; (6) payments received by the Taxpayers from the royalty paid for oil or gas extracted from their property are assessed an income tax by the United States Government and the State of Arkansas and the tax the Counties assess upon the Taxpayers is also an income tax that they are not authorized by law to assess; and (7) the "average contract price" used in the determination of the ad valorem tax is not based upon and does not reflect the actual contract prices paid for oil or gas produced from the property owned by the Taxpayers, a violation of Arkansas Constitution article 16, section 5.

Various motions to dismiss were filed, and the circuit court held a hearing on January 14, 2011. The circuit court concluded that the Taxpayers had failed to make a proper illegal-exaction₆ challenge and dismissed their lawsuit. Specifically, the circuit court found that Arkansas Constitution article 16, section 5 provides that all real and tangible property shall be taxed according to its value, a value to be ascertained in such manner as the General Assembly shall direct; the value of real

property includes the value of both surface rights and mineral rights; the Arkansas General Assembly has directed that the value of gas and oil deposits be assessed at the time the deposits are removed from the land; the tax at issue is not an income tax; the tax at issue is a valid, legally adopted, ad valorem tax on the value of mineral rights; and, the lawsuit filed by the Taxpayers did not properly allege an illegal-exaction challenge. The court entered its order on February 18, 2011.

On February 28, 2011, the Taxpayers filed a motion for new trial or rehearing, which was denied by an order of the circuit court entered March 18, 2011. The Taxpayers now present the instant appeal.

■ Before turning to the merits, we must determine the appropriate standard of review. The circuit court's order of dismissal reflected that the circuit court considered "the motions, the pleadings, evidence presented, the law and other matters" and had held a hearing on the motions to dismiss to consider the arguments of counsel. It is well settled that when a circuit court considers matters outside the pleadings, the appellate court will treat a motion to dismiss as one for summary judgment. *See Koch v. Adams*, 2010 Ark. 131, 361 S.W.3d 817. Ordinarily, upon reviewing a court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. *See Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 319 S.W.3d 239. However, in a case such as this one, which does not involve the question of whether factual issues exist but rather the application of legal rules, we simply determine whether the Counties were entitled to judgment as a matter of law. *See id.* We now turn to the merits of the appeal.

The Taxpayers argue that the circuit court erred in dismissing their claim because the allegations contained in their complaint supported an illegal-exaction claim. They contend that the claim properly alleged that the tax complained of is,

itself, illegal. While the Counties filed several separate briefs, the crux of the argument they collectively counter is that the Taxpayers' claim actually took issue with the manner in which the tax was assessed. Several of the Counties further allege that the Taxpayers' claim was improperly raised to the circuit court.

■ Article 16, section 13 of the Arkansas Constitution grants Arkansas citizens standing to pursue an illegal-exaction claim. *See Comcast of Little Rock, Inc. v. Bradshaw*, 2011 Ark. 431, 385 S.W.3d 137 (citing *Robinson v. Villines*, 2009 Ark. 632, 362 S.W.3d 870). An illegal exaction is defined as any exaction that is either not authorized by law or is contrary to law. *See id.* There are two types of illegal-exaction cases: "public funds" cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent, and "illegal-tax" cases, where the plaintiff asserts that the tax itself is illegal. *See id.* (citing *White v. Arkansas Capital Corp./Diamond State Ventures*, 365 Ark. 200, 226 S.W.3d 825 (2006)).

■ Here, the Taxpayers are not pursuing a "public funds" type of illegal-exaction claim; rather, they are attempting to make an "illegal-tax" claim. However, the assessments at issue were made for the purpose of ad valorem taxation on a mineral, here, the gas, and the Taxpayers in no way dispute that an ad valorem tax on gas as a mineral is legal.

Property taxes are authorized by virtue of the Arkansas Constitution and are required to be levied upon all personal and real property, not exempt, for the levy of taxes for schools, cities, counties, roads, hospitals, and public libraries made within the county in accordance with the Arkansas Constitution and laws of Arkansas. *See* Ark. Const. art. 16, § 5; art. 14, § 3; amend. 59; amend. 61; art. 12, § 4; art. 16, § 9; amend. 32; amend. 38; amend. 40; amend. 71; amend. 72; amend. 74;

and amend. 79. County assessors, collectors, and treasurers are under clear respective mandates of the Arkansas Constitution and laws of the State of Arkansas to assess, collect, and distribute property tax revenues to the appropriate taxing unit for their immediate use for vital governmental operations. *See* Ark.Code Ann. § 14–14–904(b)(1). The Arkansas Constitution assigns the county assessors the primary task of assessing the value of property within the county from which they are elected under the valuation scheme of property as erected by law. *See* Ark. Const. art. 7, § 46. Article 16, section 5 of the Arkansas Constitution provides: "[a]ll real and personal property subject to taxation shall be taxed according to its value, that value to be ascertained in such a manner as the General Assembly shall direct." Arkansas Code Annotated section 26–26–407 prescribes that the Assessment Coordination Department shall oversee the implementation of the standards for assessment of property in Arkansas. Assessors must determine the value of both personal property and real estate.

Mineral interests, which include ownership of natural gas deposits, constitute tangible real property. *See Sorkin v. Myers*, 216 Ark. 908, 227 S.W.2d 958 (1950); Ark.Code Ann. § 26–26–1110 (Repl.1997 & Supp.2011). Therefore, county assessors are left to determine the value of gas deposits so that the tax may be applied "equal[ly] and uniform[ly]." Ark. Const. art. 16, § 5(a). The legislature provides guidance in Ark.Code Ann. § 26–26–1110(c), which provides:

(1) Because of the difficulty of ascertaining the value of a nonproducing mineral right and in order to ensure equal and uniform taxation throughout a state, a nonproducing mineral right has zero (0) value for the purpose of property tax assessment and is included in the value of the fee simple interest assessed.

Therefore, the gas that remains as a mineral in the ground is valued at zero, but a value is assessed for tax purposes if it is produced and sold. As noted in the complaint, there is an equation used for the assessment based on values gathered at the mineral's point of sale.

A review of the Taxpayers' first-amended complaint reveals that the crux of their argument was that the tax assessed against them is illegal because of when it is assessed—at the point of sale. The Taxpayers argue that to value the gas for an ad valorem tax based upon a price at a distant market, after it is separated from the ground, is a misapplication of an ad valorem tax and greatly distorts the value to the prejudice of the landowner because, at that point, the value of the gas has been enhanced by capture, treatment and transportation to a point of sale. The Taxpayers' claim and their argument on appeal, however, ignore our well-settled precedent. This court has strictly adhered to the rule that "if the taxes complained of are not themselves illegal, a suit for illegal exaction will not lie" and that "a flaw in the assessment or collection procedure, no matter how serious from the taxpayer's point of view, does not make the exaction itself illegal." *Hambay v. Williams*, 373 Ark. 532, 535, 285 S.W.3d 239, 241–42 (2008) (quoting *Pockrus v. Bella Vista Village Prop. Owners Ass'n*, 316 Ark. 468, 472, 872 S.W.2d 416, 418 (1994)).

The instant case is similar to that presented in *Comcast, supra*. In *Comcast*, the cable-television-services provider had asserted that the Commission's Tax Division erroneously included the value of Comcast's intangible personal property, property that Comcast contended fell within a statutory exemption, when calculating its assessments. We held that Comcast's claim did not challenge the validity of the underlying tax, but alleged that the assessment was carried out in an illegal fashion and, therefore, the suit did not come within Arkansas's illegal-exaction provision. *Comcast*, 2011 Ark. 431, at 12, 385 S.W.3d

at 144. Here, as the appellant did in *Comcast*, the Taxpayers essentially argue that, for various reasons, the assessment is flawed.

■ The Taxpayers attempt to present their challenge in a few additional ways. They allege that the way in which the taxes are assessed transform the tax into a tax on intangible personal property or into an income tax; however, as they concede, the values used in the assessment formula are not unique based on the income of each taxpayer. Instead, the assessment is based on average contract prices, production figures, and a standard assessment rate. Any issue with the values used in the formula is an issue with the assessment of the tax. While the Taxpayers claim that the tax at issue is an illegal duplicative tax because it is also subject to a severance tax, such circumstances were explicitly contemplated by the legislature. Arkansas Code Annotated section 26–58–109 (Repl.2008) expressly provides, "[t]he severance tax imposed by this subchapter is in addition to the general property tax." Therefore, the co-existence of ad valorem property taxes on minerals, oil, and natural gas interests and the subsequently enacted severance tax on minerals has been explicitly authorized.

■ Finally, the Taxpayers argue that the tax violates the Equal Protection Clause because landowners that own non-producing mineral interests are not taxed the same way. There are two reasons that argument simply lacks merit here. First, they have not shown how they are similarly situated to those landowners, a requirement to state a claim under equal protection. *See Arkansas Beverage Retailers Ass'n v. Langley*, 2009 Ark. 187, 305 S.W.3d 427. Second, the heart of that argument is really that the value of those landowners' gas mineral has been set at zero, *see* Ark.Code Ann. § 26–26–1110(c)(1), while the Taxpayers here are

taxed at some other value. Again, that is a contention with how the taxes are assessed.

We have held that an allegation that the assessment of taxes was carried out in an unconstitutional and illegal manner does not fall within the illegal-exaction provision. *See Pledger v. Featherlite Precast Corp.*, 308 Ark. 124, 823 S.W.2d 852 (1992) (holding no illegal-exaction action where taxpayer did not contend that the use tax itself was illegal, but rather contended that the assessment of its individual tax was erroneously based on certain tangible personal property). Likewise, a suit to determine whether a taxpayer's transactions fall within a statutory exemption does not come within article 16, section 13. *See Taber v. Pledger*, 302 Ark. 484, 791 S.W.2d 361 (1990); *see also Western Foods, Inc. v. Weiss*, 338 Ark. 140, 992 S.W.2d 100 (1999). Because the Taxpayers' claim did not challenge the validity of the underlying tax, it is clear to this court that their suit does not come within Arkansas's illegal-exaction provision.

The proper appeal process for allegations of improper ad valorem tax assessments is set forth in Ark.Code. Ann. §§ 26–27–317 to –318 (Repl.1997 & Supp. 2011). An aggrieved property owner's first step is to contest the ad valorem property tax assessment to the county equalization board. *See* Ark.Code Ann. § 26–27–317. The board's decision, once rendered, can be appealed to the county court. *See* Ark.Code Ann. § 26–27–318. *See, e.g., Crittenden Hosp. Ass'n v. Bd. of Equalization of Crittenden County*, 330 Ark. 767, 958 S.W.2d 512 (1997). This court has upheld this process in the past when it was ignored. *See, e.g., Jones v. Crouch*, 231 Ark. 720, 332 S.W.2d 238 (1960).

For the above-stated reasons, the circuit court was correct in dismissing the Taxpayers' complaint. The Taxpayers' avenue

of relief for its assessment grievance lay with each county's equalization board. Accordingly, we affirm the order of the circuit court.

Affirmed.

HANNAH, C.J., and BAKER, J., not participating.