
# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-12-988

| | |
|---|---|
| | **Opinion Delivered** October 9, 2013 |
| FORD MOTOR COMPANY | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION |
| APPELLANT | [No. 60CV-10-4722] |
| V. | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| CHARLES KEATTS | |
| APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

This is an appeal from unanimous jury verdicts returned in favor of appellee Charles Keatts, for breach of warranty under the Arkansas Lemon Law and the federal Magnuson-Moss Warranty Act. Appellant Ford Motor Company argues that the jury verdicts must be reversed based on Keatts's failure to satisfy a condition precedent to filing suit and that the trial court abused its discretion in awarding attorney's fees and costs to Keatts. We disagree and affirm.

In August of 2008, Keatts purchased a Ford Explorer from Crain Ford in Little Rock, Arkansas, at which time he received two booklets—an Arkansas Lemon Law booklet and a warranty booklet. The warranty booklet explained that Keatts was required to submit warranty disputes to the Better Business Bureau (BBB) Auto Line program for informal disputes prior to filing suit. After several repair attempts failed, Keatts filed suit against Ford on August 11, 2010. His claims were based on the Arkansas New Motor Vehicle Quality Assurance Act (the Arkansas "Lemon Law") and the federal Magnuson-Moss Warranty Act.

Ford responded with a motion to dismiss (which was converted to a motion for summary judgment), arguing that Keatts was required to submit his warranty dispute to the BBB Auto Line program before seeking remedies at law—either federal or state. The trial court denied the motion and further ruled that participation in Informal Dispute Settlement Proceedings (IDSP) was not an affirmative defense, but was instead a condition precedent to suit. The trial court ruled that, as a matter of law, Keatts had satisfied that condition and excluded evidence from trial suggesting that Keatts had failed to follow the terms of the warranty agreement.

At trial, Ford made two directed-verdict motions, urging that Keatts's failure to participate in the IDSP was fatal to his causes of action. Each time, the trial court refused the argument and denied the motion based on its conclusion that, as a matter of law, Keatts had satisfied the condition. Ultimately, the jury found for Keatts on both claims. He elected the remedies available under the Lemon Law, which allowed for recovery of the purchase cost of the vehicle adjusted for use of the car. Additionally, on June 20, 2012, Keatts was awarded $31,599 in attorney's fees and costs. Ford responded with a timely notice of appeal, which was amended to include the fee and cost issue.

For its first point on appeal, Ford argues that because both the Lemon Law and the Magnuson-Moss Act required Keatts to engage in IDSP before suit, and it is undisputed that he failed to do so, the judgment should be reversed. Because the issue is a question of law, we afford no deference to the trial court and review the issue de novo. *Robinson v. Villines*, 2009 Ark. 632, at 7, 362 S.W.3d 870, 874.

Ford is correct in its assertion that the Lemon Law does require consumers to participate in IDSP prior to bringing legal action to enforce consumer rights, so long as the manufacturer made the required disclosures. Ark. Code Ann. § 4-90-404(a)(b)(Repl. 2011). Accordingly, Ford argues that the remedies of the Lemon Law "do not apply to a consumer who has not first used this informal proceeding before commencing a civil action, unless the manufacturer allows a consumer to commence an action without first using this informal proceeding, or unless the manufacturer has failed to make the disclosure required by §4-90-404(b)." Neither of the exceptions is applicable to this case—there is no dispute that the required disclosures were made, and there is no record of waiver of the required IDSP. The language of Arkansas Code Annotated section 4-90-414(b)(1) also requires that

> [t]he informal dispute proceeding must comply with the minimum requirements of the Federal Trade Commission for informal dispute settlement proceedings as set forth in 16 CFR § 703.1 et. seq., as in effect on the date of adoption of this subchapter, unless any provision of 16 C.F.R. §703.1 et. seq. is in conflict with this subchapter, in which case the provisions of this subchapter shall govern.

Here, Ford proffered evidence claiming that its BBB Auto Line program met all Federal Trade Commission (FTC) requirements and showing that Auto Line had been found to meet FTC requirements in other states. However, Keatts responded that, as a matter of law, Ford's IDSP did not comply with the FTC standard and conflicted with the Lemon Law because it failed to afford all remedies available under Arkansas law. We agree with Keatts's position.

In 16 C.F.R. § 703.5, the requirements for how the IDSP must operate are addressed. If the parties do not settle the dispute, the IDSP shall

> (1) [r]ender a fair decision based on the information gathered as described in paragraph (c) of this section, and on any information submitted at an oral presentation which

SLIP OPINION

conforms to the requirements of paragraph (f) of the section (A decision shall include any remedies appropriate under the circumstances, including repair, replacement, refund, reimbursement for expenses, compensation for damages, and any other remedies available under the written warranty or the Act (or rules thereunder); and a decision shall state a specified reasonable time for performance).

16 C.F.R. § 703.5(d). According to the remedies section of the Lemon Law, if the manufacturer fails to repair the vehicle after a final attempt, the manufacturer shall

(i)[a]t the time of its receipt of payment of a reasonable offset for use by the consumer, replace the motor vehicle with a replacement motor vehicle acceptable to the consumer; or (ii) repurchase the motor vehicle from the consumer or lessor and refund to the consumer or lessor the full purchase price or lease price, less a reasonable offset for use and less a reasonable offset for physical damage sustained to the vehicle while under the ownership of the consumer.

Ark. Code Ann. § 4-90-406(b)(1)(A) (Repl. 2011). This section also provides that the "consumer shall have an unconditional right to choose a refund rather than a replacement." Ark. Code Ann. § 4-90-406(b)(2)(A). Keatts argues that because Ford's IDSP does not require consumer approval of a replacement as Arkansas law requires, it fails as a matter of law. The specific replacement language of the IDSP says "Ford will provide a replacement vehicle from dealer inventory that is identical or reasonably equivalent to the replaced motor vehicle as it existed at the time of original acquisition."

According to Keatts, this language does not require that he be "made whole," but instead places him in a "take-it-or-leave-it position." Ford responds that the Auto Line agreement is non-binding and that when a BBB Auto Line arbitrator renders a decision, "[one is] not bound by the decision unless [one chooses] to accept it." Following this reasoning, Ford claims that because Keatts could reject any arbitration award and pursue all remedies at law available to him, he is not in a take-it-or-leave-it position as he so claims.

Here, although the IDSP does allow for a replacement vehicle, there is no language requiring that the replacement be acceptable to the consumer or granting the consumer the unconditional right to choose a refund rather than a replacement.[1] The Lemon Law requires that if the FTC requirements for IDSPs conflict with the provisions of the Lemon Law, the provisions of the Lemon Law shall govern. Ark. Code Ann. § 4-90-414(b)(1) (Repl. 2011). Thus, because all remedies under Arkansas state law were not available to Keatts under this particular IDSP, we hold that his failure to participate in the arbitration did not preclude his state-law action and that he could proceed to court without exhausting the IDSP options. Therefore, the trial court did not err in its denial of Ford's directed-verdict motions, and we affirm the jury verdicts in favor of Keatts.

Ford also claims that we should reverse the trial court's decision awarding Keatts $31,599 in attorney's fees and costs. It is well settled that an award of attorney's fees is a discretionary exercise by the trial court, and an award will be reversed only if it is shown that the trial court abused its discretion. *Knesek v. Cameron Hubbs Constr., Inc.*, 2013 Ark. App. 380. Here, Keatts submitted billing records showing $51,529 in total fees. A "block billing"[2] time-entry method was utilized by Keatts's attorneys, which Ford claims raises suspicion as to whether all the work claimed was accomplished and whether it was necessary. However, the trial court carefully considered the fee request, using the factors set out by our supreme court in *Chrisco v. Sun*

---

[1]There is nothing in the record to show that the parties either agreed to use state-law remedies or that the parties could consider remedies beyond those set forth in the IDSP.

[2]According to the record, "block billing" is a practice where the amount of time spent by an attorney on each discrete task is not identified, but instead all hours spent during the course of a day on multiple tasks are billed together.



*Industries*, 304 Ark. 227, 800 S.W.2d 717 (1990), to guide the trial court's fee determination. And, after a complete review, the trial court awarded significantly less in fees than requested by Keatts. Accordingly, we see no abuse in discretion and affirm the fee and costs awards.

Affirmed.

PITTMAN and WALMSLEY, JJ., agree.

*Wright, Lindsey & Jennings LLP*, by: *Jerry J. Sallings*, *Gary D. Marts, Jr.*, and *Antwan D. Phillips*, for appellant.

*SmithMarco, P.C.*, by: *David Marco* and *Leon Jones*, for appellee.